THOMAS C. ODDO, Plaintiff v. JEFFREY L. PRESSER, Defendant

No. COA02-560

(Filed 17 June 2003)

**1. Appeal and Error— preservation of issues—jury instruc-
tion—failure to object on assigned grounds**

Although defendant contends the trial court erred by its
instruction to the jury regarding alienation of affections, this
assignment of error was waived, because: (1) although defendant
objected to the jury instructions regarding alienation of affec-
tions, the objection pertained solely to a limited instruction
regarding evidence of a recorded telephone conversation; and (2)
there is no indication in the transcript that defendant opposed
the offered standard concerning alienation of affections to which
he now assigns error.

**2. Appeal and Error— preservation of issues—loss of
income—failure to object on assigned grounds**

Although defendant contends the trial court erred in an
alienation of affections and criminal conversation case by admit-
ting evidence of alleged damages to plaintiff concerning plain-
tiff's lost income from his termination from employment as an
investment advisor and his loss of income from a part-time col-
lege coaching job, defendant failed to preserve these issues
because: (1) although defendant objected at trial to plaintiff's
presentation of evidence concerning lost income and benefits,
defendant did not object on the ground that plaintiff's lost
income and benefits were not to be considered in determining
damages for alienation of affections and criminal conversation;
and (2) although defendant objected to the introduction of evi-
dence concerning defendant's lost income from the college only
on the grounds of hearsay and the unavailability of summarized
documents presented to the jury, defendant failed to object on
the ground of uncertainty.

**3. Damages and Remedies— loss of income—investment
advisor**

The trial court did not err in an alienation of affections and
criminal conversation case by admitting evidence of alleged dam-
ages to plaintiff concerning loss of plaintiff's income as an invest-
ment advisor, because: (1) plaintiff's expert testimony evidence

ODDO v. PRESSER

[158 N.C. App. 360 (2003)]

of his loss of income as an investment advisor was not so speculative as to preclude an award of damages based thereon; and (2) the testimony of witnesses as to the nature and extent of a plaintiff's injuries is evidence to be considered by the jury.

**4. Damages and Remedies— loss of tuition benefits—speculative damages**

The trial court erred in an alienation of affections and criminal conversation case by admitting evidence of alleged damages to plaintiff concerning loss of tuition benefits from Davidson College after plaintiff's termination from employment, because the evidence was overly speculative when: (1) plaintiff's three children were ten, seven, and three years of age; and (2) plaintiff offered no evidence to indicate the college would continue to offer the same or any tuition benefits eight to fifteen years in the future.

**5. Alienation of Affections— punitive damages—evidence of sexual relations**

The trial court did not err by submitting the issue of punitive damages to the jury on plaintiff's claim of alienation of affections, because: (1) evidence of sexual relations will allow a plaintiff to get to the jury on the issue of punitive damages in a claim for alienation of affections; and (2) there was evidence from which the jury could find that defendant engaged in sexual intercourse with plaintiff's wife on two separate occasions prior to her legal separation from plaintiff.

**6. Damages and Remedies— punitive damages—excessive**

The trial court did not abuse its discretion in an alienation of affections and criminal conversation case by failing to grant defendant a new trial on the issue of punitive damages even though defendant contends the award of punitive damages was excessive as a matter of law, because: (1) the amount awarded for punitive damages was substantially lower than the compensatory damages award; and (2) plaintiff's establishment of his cause of action and his entitlement to at least nominal damages meant the award of punitive damages could stand alone and is unaffected by the Court of Appeals' decision to grant defendant a new trial on the issue of compensatory damages.

Judge LEVINSON concurring in part and dissenting in part.

**ODDO v. PRESSER**

[158 N.C. App. 360 (2003)]

Appeal by defendant from judgment entered 4 May 2001 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 29 January 2003.

*KMZ Rosenman, by L. Stanley Brown, and Michelle D. Reingold, for plaintiff appellee.*

*Maxwell, Freeman & Bowman, P.A., by James B. Maxwell, for defendant appellant.*

TIMMONS-GOODSON, Judge.

Jeffrey L. Presser ("defendant") appeals from the judgment of the trial court entered upon a jury verdict finding him liable to Thomas C. Oddo ("plaintiff") for criminal conversation and alienation of affections. For the reasons stated herein, we find no error in part and reverse in part the judgment of the trial court.

The pertinent facts of the instant appeal are as follows: Plaintiff married Debra Tyson ("Debra") in 1988. During the marriage, plaintiff was primarily employed as an investment advisor earning approximately $32,000.00 annually. Plaintiff also coached wrestling at Davidson College ("Davidson"), where his salary was based on a sliding scale that started at $2,000.00 per year in 1985 and progressed to $24,000.00 per year in 1999. Debra worked as a vice-president at Bank of America in Charlotte. She was also the primary care-giver for the couple's three children.

By February of 1999, Debra had become unhappy with her marriage, and she contacted defendant, a former high school and college boyfriend. Following their initial telephone conversation, defendant mailed a letter to Debra at her workplace. Defendant also called Debra at her home. Debra telephoned defendant in March of 1999. As a result of that conversation, Debra and defendant met in Charlotte three times between the 18th and 20th of March 1999. While visiting, Debra and defendant engaged in sexual intercourse at a hotel. After their first meeting, Debra and defendant continued to communicate via electronic mail.

On 29 March 1999, Debra informed plaintiff that she was in love with someone else and wanted a separation. Debra and plaintiff physically separated in April of 1999. After the separation, plaintiff learned of Debra and defendant's communications and involvement during the marriage. Debra and plaintiff subsequently divorced.

**ODDO v. PRESSER**

[158 N.C. App. 360 (2003)]

Plaintiff filed an amended complaint against defendant on 19 January 2000 in Mecklenburg County Superior Court, seeking compensatory and punitive damages for his claims of alienation of affections and criminal conversation. The case came before the jury on 17 April 2001. After considering the evidence, the jury found defendant liable to plaintiff and awarded him $910,000.00 in compensatory damages and $500,000.00 in punitive damages. The trial court entered judgment accordingly. From the judgment entered against him, defendant appeals.

---

Defendant contends the trial court erred in (1) improperly instructing the jury; (2) allowing evidence regarding damages to plaintiff; and (3) submitting the issue of punitive damages to the jury. Defendant further argues that (4) the award of punitive damages was excessive as a matter of law. For the reasons that follow, we conclude that the trial court erred in allowing speculative evidence concerning damages to plaintiff. We otherwise discern no error by the trial court.

[1] Defendant first assigns error to the trial court's instruction to the jury regarding alienation of affections. Specifically, defendant argues that the instruction given by the trial court required a lower standard of proof for establishing a claim for alienation of affections than is allowed under North Carolina law. We conclude that defendant has waived this assignment of error.

The North Carolina Rules of Appellate Procedure preclude a party from "assign[ing] as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection[.]" N.C.R. App. P. 10(b)(2) (2002); *see Shaw v. Stringer*, 101 N.C. App. 513, 517, 400 S.E.2d 101, 103 (1991). Although defendant objected to the jury instructions regarding alienation of affections, the objection pertained solely to a limiting instruction regarding evidence of a recorded telephone conversation. There is no indication in the transcript that defendant opposed the offered standard concerning alienation of affections to which he now assigns error. Because defendant did not object on these grounds, he failed to preserve his argument for appeal. *See* N.C.R. App. P. 10(b)(1). We therefore overrule this assignment of error.

By his second assignment of error, defendant argues that the trial court erred in admitting evidence of alleged damages to plaintiff aris-

ing from defendant's actions. At trial, plaintiff asserted that defendant's actions caused him such mental anguish as to impair his ability to effectively function in the workplace, resulting in the termination of his employment both as an investment advisor and a wrestling coach. Plaintiff argued that his termination from these positions resulted in a loss of income and other benefits. Defendant now asserts that the jury improperly considered evidence concerning plaintiff's loss of (1) income from investment advisor clients; (2) income and retirement benefits from his position as a wrestling coach at Davidson; and (3) tuition benefits. We consider defendant's arguments supporting this assignment of error in turn.

[2] Defendant first argues that the trial court erred in allowing evidence of plaintiff's lost income and benefits arising from his termination of employment. Defendant correctly notes that damages for alienation of affections and criminal conversation are limited to " 'the present value in money of the support, consortium, and other legally protected marital interests lost . . . through the defendant's wrong' " and " 'wrong and injury done to . . . health, feelings, or reputation,' " including damages for mental distress. *Hutelmyer v. Cox*, 133 N.C. App. 364, 373, 514 S.E.2d 554, 561 (quoting *Sebastian v. Kluttz*, 6 N.C. App. 201, 219, 170 S.E.2d 104, 115 (1969)), *disc. review denied*, 351 N.C. 104, 541 S.E.2d 146 (1999) *and appeal dismissed*, 351 N.C. 356, 542 S.E.2d 211 (2000). Again, however, defendant has failed to preserve this argument for appellate review.

To "preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make." N.C.R. App. P. 10(b)(1). Where a defendant objects to evidence on only one ground, he fails to preserve for appeal any additional grounds. *See State v. Francis*, 341 N.C. 156, 160, 459 S.E.2d 269, 271 (1995).

Although defendant objected at trial to plaintiff's presentation of evidence concerning lost income and benefits, defendant failed to object on the grounds that plaintiff's lost income and benefits were not to be considered in determining damages for alienation of affections and criminal conversation. Rather, defendant's objections centered on his contention that the evidence was speculative, improperly documented, and constituted impermissible hearsay. As a result, defendant has failed to preserve for appeal his argument that plaintiff's lost income and benefits were improper measures of damages

allowed in alienation of affections and criminal conversation claims. *See Francis*, 341 N.C. at 160, 459 S.E.2d at 271.

Defendant further argues that the admission of plaintiff's evidence of damages was improper as too speculative and uncertain. We note that defendant objected to the introduction of evidence concerning plaintiff's lost income from Davidson only on the grounds of hearsay and the unavailability of summarized documents that were presented to the jury, and not on the grounds of uncertainty. Defendant has therefore failed to preserve his argument relating to plaintiff's loss of income from Davidson. *See* N.C.R. App. P. 10(b)(1).

**[3]** Defendant did, however, properly object to the introduction of evidence concerning loss of plaintiff's income as an investment advisor and tuition benefits from Davidson as overly speculative. Plaintiff argues that the economic losses he suffered as a result of his poor work performance were a natural and consequential injury stemming from defendant's conduct.

The general rule in North Carolina is that where a plaintiff is injured by the tortious conduct of a defendant, "the plaintiff is entitled to recover the present worth of all damages naturally and proximately resulting from [the] defendant's tort." *King v. Britt*, 267 N.C. 594, 597, 148 S.E.2d 594, 597 (1966). A defendant's "liability extends not only to injuries which are directly and immediately caused by his act, but also to such consequential injuries, as according to the common experience of men, are likely to result from such act." *Lane v. R.R.*, 192 N.C. 287, 290, 134 S.E. 855, 857 (1926).

Although precise damages are often difficult to ascertain, a jury may award damages based upon evidence that is relatively speculative, *see DiDonato v. Wortman*, 320 N.C. 423, 431, 358 S.E.2d 489, 494 (1987), and it is well settled that some speculation is inherent in the projection of future earning capacity. *See Bahl v. Talford*, 138 N.C. App. 119, 126, 530 S.E.2d 347, 352, *disc. review denied*, 352 N.C. 587, 544 S.E.2d 776 (2000). Recovery is not permitted, however, where speculation becomes unreasonable. *See DiDonato*, 320 N.C. at 431, 358 S.E.2d at 494 (holding that, in an action for wrongful death of a stillborn child, losses related to income were too speculative); *compare Fox-Kirk v. Hannon*, 142 N.C. App. 267, 273, 542 S.E.2d 346, 351 (holding that, in an action for personal injuries to a minor child, evidence pertaining to the child's mental and physical condition at age two years and eleven months was sufficient to provide the jury with a reasonable basis upon which to estimate dam-

ages of the child's lost earnings), *disc. review denied*, 353 N.C. 725, 551 S.E.2d 437 (2001).

Concerning plaintiff's loss of income as an investment advisor, defendant points to the uncertainty of future commissions based on projected investments and the growth or decline of financial markets and plaintiff's investment portfolios. While these contentions may make plaintiff's forecast of damages less certain, we conclude that plaintiff's evidence of his loss of income as an investment advisor, presented in the form of expert testimony, was not so speculative as to preclude an award of damages based thereon. *See Fox-Kirk*, 142 N.C. App. at 273, 542 S.E.2d at 351.

In addition to challenging plaintiff's evidence as too speculative and uncertain, defendant argues he does "not believe it is in 'the common experiences of men' that plaintiff would have" been unable to remain employed due to his mental distress and depression. It is within the province of the jury to determine questions of fact, however, and the testimony of witnesses as to the nature and extent of a plaintiff's injuries is simply evidence to be considered by the jury. *See Albrecht v. Dorsett*, 131 N.C. App. 502, 505, 508 S.E.2d 319, 322 (1998). In the determination of facts, it is not for this Court to replace its judgment with that of the jury. *Id.*

[4] Defendant further contends that evidence pertaining to plaintiff's loss of tuition benefits was speculative and improperly admitted by the trial court. At trial, plaintiff submitted an exhibit detailing tuition benefits offered by Davidson to the children of employees. According to the exhibit, Davidson funds eighty percent of the tuition for an employee's child or the equivalent of seventy percent of Davidson's tuition, if the child elects to attend a different college. Plaintiff argued that the loss of these benefits constituted actual damages suffered by plaintiff as a result of defendant's actions. The exhibit submitted by plaintiff estimated the present value of plaintiff's loss of tuition benefits as $282,122.87. Defendant asserts that these damages were too speculative and should not have been admitted into evidence. On this point, we agree with defendant.

At the time of trial, plaintiff's three children were ten, seven, and three years of age. The oldest child was eight years and the youngest child was fifteen years away from deciding whether to attend or being admitted to any college. Further, plaintiff offered no evidence to indicate that Davidson would continue to offer the same or any tuition benefits eight to fifteen years in the future. "The law disfa-

ODDO v. PRESSER

[158 N.C. App. 360 (2003)]

vors—and in fact prohibits—recovery for damages based on sheer speculation. . . . Damages must be proved to a reasonable level of certainty, and may not be based on pure conjecture." *DiDonato*, 320 N.C. at 430-31, 358 S.E.2d at 493. We conclude that the exhibit detailing plaintiff's loss of tuition benefits was overly speculative, and that the trial court erred in submitting it to the jury. Because it is impossible to determine the amount awarded by the jury in compensation of plaintiff's loss of tuition benefits, if any, a new trial on the issue of compensatory damages must be granted. We therefore reverse the judgment in part and remand this case to the trial court for a new trial on the issue of compensatory damages. We otherwise overrule defendant's second assignment of error.

[5] By his third assignment of error, defendant contends there was insufficient evidence of aggravating factors to submit the issue of punitive damages to the jury on plaintiff's claim of alienation of affections. We do not agree.

In actions for alienation of affections, punitive damages are recoverable where the plaintiff alleges and presents evidence that the defendant's conduct is malicious, willful, or of wanton character. *See* N.C. Gen. Stat. § 1D-15 (2001); *Ward v. Beaton*, 141 N.C. App. 44, 49, 539 S.E.2d 30, 34 (2000), *cert. denied*, 353 N.C. 398, 547 S.E.2d 43 (2001). To that end, the plaintiff must present "evidence of circumstances of aggravation in addition to the malice implied by law from the conduct of defendant in alienating the affections between the spouses which was necessary to sustain a recovery of compensatory damages." *Chappell v. Redding*, 67 N.C. App. 397, 403, 313 S.E.2d 239, 243, *disc. review denied*, 311 N.C. 399, 319 S.E.2d 268 (1984). "Evidence of 'sexual relations' will allow a plaintiff to get to the jury on the issue of punitive damages in a claim for alienation of affections." *Ward*, 141 N.C. App. at 50, 539 S.E.2d at 34; *see also* Suzanne Reynolds, *Lee's North Carolina Family Law*, § 5.48(c) (5th ed. 1993) (concluding that "[w]here there are sexual relations, the plaintiff will get to the jury on punitive damages whether the claim is for alienation of affections or for criminal conversation or, as is often the case, for both").

In the instant case, there was evidence from which the jury could find that defendant engaged in sexual intercourse with plaintiff's wife on two separate occasions prior to her legal separation from plaintiff. As such, the trial court did not err in submitting the issue of punitive damages to the jury. *See Ward*, 141 N.C. App. at 50, 539 S.E.2d at 34; *see also Scott v. Kiker*, 59 N.C. App. 458, 464, 297 S.E.2d 142, 147

(1982) (upholding punitive damages against the defendant in an action for alienation of affections and criminal conversation, where the only evidence of malice or other aggravating circumstances was evidence from which the jury could infer sexual relations between the defendant and the plaintiff's wife). We therefore overrule this assignment of error.

**[6]** By his final assignment of error, defendant argues that the punitive damages awarded in this case were excessive as a matter of law, and that the trial court therefore abused its discretion in failing to grant a new trial. We disagree. Section 1D-25 of the North Carolina General Statutes provides in pertinent part as follows:

> Punitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater. If a trier of fact returns a verdict for punitive damages in excess of the maximum amount specified under this subsection, the trial court shall reduce the award and enter judgment for punitive damages in the maximum amount.

N.C. Gen. Stat. § 1D-25(b) (2001). Within the statutory limits, the jury may award punitive damages in its sound discretion, and the trial court should not disturb such an award unless the amount assessed is " 'excessively disproportionate to the circumstances of contumely and indignity present in the case.' " *Hutelmyer*, 133 N.C. App. at 375, 514 S.E.2d at 562 (quoting *Carawan v. Tate*, 53 N.C. App. 161, 165, 280 S.E.2d 528, 531 (1981)). Even nominal damages may support a substantial award of punitive damages. *See Horner v. Byrnett*, 132 N.C. App. 323, 328, 511 S.E.2d 342, 346 (1999) (concluding that there was no abuse of discretion by the trial court in denying the defendant's motion for a new trial where the jury awarded the plaintiff $1.00 in compensatory damages and $85,000.00 in punitive damages for criminal conversation).

In *Hutelmyer*, the jury awarded the plaintiff $500,000.00 in compensatory damages and $500,000.00 in punitive damages in a claim for alienation of affections and criminal conversation. *See Hutelmyer*, 133 N.C. App. at 375, 514 S.E.2d at 562. The defendant argued on appeal that the award of punitive damages was excessive as a matter of law. Because the jury could have awarded 1.5 million dollars in punitive damages under section 1D-25(b), this Court concluded that the award of $500,000.00 was not excessive as a matter of law, and that no abuse of discretion had been shown. *See id.*

Defendant in the present case has likewise shown no abuse of discretion by the trial court. Even subtracting the total amount of $282,122.87, which plaintiff represented was the value of his lost tuition benefits, from the amount of compensatory damages awarded by the jury, the amount awarded for punitive damages remains substantially lower than the compensatory damages award. Further, because plaintiff has established his cause of action, and therefore his entitlement to at least nominal damages, the award of punitive damages may stand alone and is unaffected by our decision to grant defendant a new trial on the issue of compensatory damages. *See Jennings v. Jessen*, 103 N.C. App. 739, 744-45, 407 S.E.2d 264, 267 (1991) (affirming an award for punitive damages in the amount of $300,000.00 although vacating the award of $200,000.00 in compensatory damages). The trial court did not abuse its discretion in denying defendant's motion for a new trial, and we overrule this assignment of error.

In conclusion, we hold that the trial court erred in allowing evidence of speculative damages to plaintiff. We must therefore reverse in part the judgment of the trial court and remand this case for a new trial on the issue of compensatory damages. We otherwise find no error by the trial court.

Reversed in part, no error in part, and remanded for a new trial on the issue of compensatory damages.

Judge TYSON concurs.

Judge LEVINSON concurs in part and dissents in part.

LEVINSON, Judge, concurring in part and dissenting in part.

I agree with the majority's analysis and conclusions, except for the specific portions holding (1) plaintiff's evidence of lost tuition benefits from Davidson College (Davidson) was "overly speculative," and (2) the trial court did not err in allowing the jury to consider punitive damages for alienation of affections. Further, because I would reverse the punitive damages award, I make no comment on defendant's contention it was excessive as a matter of law.

## I. PLAINTIFF'S LOST TUITION BENEFITS

I would hold that there is no error in the judgment on compensatory damages. While I agree with the majority's presentation of the

relevant case law, I reach a different conclusion upon analysis of the same as applied to the facts of this case.

Plaintiff's testimony regarding his lost income, benefits, and services was supplemented by expert testimony from Dr. Albert Link, Professor of Economics at the University of North Carolina at Greensboro's Bryan School of Business, on "economic analysis." Using information specific to plaintiff and Debra, as well as relevant statistical averages, Dr. Link calculated and reduced to present value the cost of, *inter alia*, plaintiff's lost tuition benefits from Davidson. Plaintiff also admitted into evidence a summary of Dr. Link's calculations, which utilized a benchmark rate of inflation to calculate the probable cost of Davidson tuition through the period during which plaintiff's children would likely attend college. Using this table, Dr. Link calculated the total amount that Davidson would have paid for plaintiff's children's education. He then reduced that amount to present value, based upon a conservative rate of growth. A comparison of this evidence to that reviewed in our Courts' decisions regarding damages in wrongful death actions is instructive.

Our appellate Courts have often held that, in the context of wrongful death actions, losses related to a child's future income are overly speculative if that child was stillborn. *DiDonato v. Wortman*, 320 N.C. 423, 431, 358 S.E.2d 489, 494 (1987) (quoting *Graf v. Taggert*, 43 N.J. 303, 310, 204 A.2d 140, 144 (1964)); *Gay v. Thompson*, 266 N.C. 394, 400, 146 S.E.2d 425, 429 (1966); *Fox-Kirk v. Hannon*, 142 N.C. App. 267, 272, 542 S.E.2d 346, 351, *disc. review denied*, 353 N.C. 725, 551 S.E.2d 437 (2001). However, this Court, while acknowledging that proof of future damages regarding children "involves a significant degree of speculation," has allowed young children *to recover for* loss of earning capacity provided the evidence is sufficient to show that such damages are not *unreasonably* speculative. *Fox-Kirk*, 142 N.C. App. at 272, 542 S.E.2d at 351. In particular, it is significant that in *Fox-Kirk* this Court upheld admission of expert testimony on the probability that a child who was less than three years old at the time of a scarring injury would later attend college, and affirmed recovery for the child's lost earning capacity. *Id.* at 273, 542 S.E.2d at 351.

The majority cites the children's ages and the length of time before they will determine whether to attend college as factors contributing to the speculative nature of plaintiff's claim. However, in light of precedent declining to hold damages unreasonably speculative where the evidence included the probability a child would have

attended college but for her injuries before attaining three years of age, *see Fox Kirk v. Hannon, id.*, I cannot agree that evidence of plaintiff's lost tuition benefits for his children, all of whom were at least three years of age at the time of trial, is overly speculative.[1]

The majority also concludes plaintiff's evidence of lost tuition benefits is too speculative because plaintiff did not offer evidence that Davidson's tuition program would continue to exist in the future. However, the uncontradicted evidence was that Davidson's tuition benefit program, rather than being a bonus, is *guaranteed* to all employees who have worked at Davidson for at least three years. The reasonable inference is that, in the absence of evidence to the contrary, Davidson's guaranteed tuition benefit program will exist when plaintiff's children are college age.

In view of case law and the facts in this case, plaintiff's evidence of lost tuition benefits was properly submitted to the jury. I would affirm the award of compensatory damages in all respects.

## II. PUNITIVE DAMAGES FOR ALIENATION OF AFFECTIONS

Secondly, there is error in the judgment on punitive damages. I do not agree with the majority that the evidence of sexual intercourse, without other evidence of aggravating circumstances, is sufficient to allow the submission of punitive damages to the jury in this action for alienation of affections.

This Court recently examined an issue similar to that presented in this case, and stated that, "[e]vidence of 'sexual relations' *will allow* a plaintiff to get to the jury on the issue of punitive damages in a claim for alienation of affections." *Ward v. Beaton*, 141 N.C. App. 44, 50, 539 S.E.2d 30, 34 (2000) (emphasis added). However, *Ward* cited and summarized the following cases in support of this proposition:

> *Hutelmyer v. Cox*, 133 N.C. App. [364,] 371, 514 S.E.2d [554,] 560 [(1999)] (finding sufficient aggravating factors where defendant engaged in sexual relations with plaintiff's husband, publicly dis-

---

1. Moreover, defendant's argument on appeal that the tuition benefits are overly speculative is primarily grounded not on the question whether these children will attend college, but rather on evidence suggesting plaintiff might not continue working at Davidson for reasons unrelated to defendant's conduct: (1) plaintiff's DWI conviction; (2) the lack of success of Davidson's wrestling team while plaintiff was its coach; and (3) the impact of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* (2001) (prohibiting gender discrimination in educational programs or activities receiving federal funding) on Davidson's decision to continue its wrestling program.

played the affair, welcomed him into her home numerous times, and called plaintiff's home to determine his whereabouts); *Jennings v. Jessen,* 103 N.C. App. 739, 744, 407 S.E.2d 264, 267 (1991) (finding sufficient aggravating factors where defendant engaged in sexual intercourse with plaintiff's husband, as well as "cohabited for several weeks with [him] and was audacious enough to call plaintiff's home in an attempt to discover [his] whereabouts"); *Shaw v. Stringer,* 101 N.C. App. 513, 517, 400 S.E.2d 101, 103 (1991) (finding sufficient aggravating factors where defendant had sexual intercourse with plaintiff's wife, ignored plaintiff's request not to visit the marital home, and laughed when plaintiff's wife told him that plaintiff knew of the relationship).

*Id. Ward* also cited the following cases where the evidence was insufficient to submit the issue of punitive damages to the jury: *Cottle v. Johnson,* 179 N.C. 426, 431, 102 S.E. 769, 771 (1920) (ordering new trial where plaintiff received punitive damages for alienation of affections in case in which plaintiff did not make out criminal conversation and the court found no aggravating circumstances); *Chappell v. Redding,* 67 N.C. App. 397, 403, 313 S.E.2d 239, 243 (1984) (finding no evidence of criminal conversation, and reversing and remanding on the issue of punitive damages for alienation of affections because, although "the increasing amounts of time spent with plaintiff's wife was enough to permit the alienation of affections issue to go to the jury, plaintiff [failed to show] additional circumstances of aggravation to justify the submission of the punitive damages issue"); *Heist v. Heist,* 46 N.C. App. 521, 527, 265 S.E.2d 434, 438 (1980) (affirming trial court's refusal to enter judgment on the verdict for plaintiff on the issue of punitive damages where plaintiff's only evidence of aggravation tended to show that defendant allowed plaintiff's spouse to repeatedly visit her house even though defendant had knowledge that such visits caused marital discord).

The majority relies heavily on *Ward* in support of its conclusion that sexual intercourse, in and of itself, is sufficient to submit the issue of punitive damages to a jury.[2] However, this was·not the essen-

---

2. The only other case authority the majority cites for its conclusion is *Scott v. Kiker,* 59 N.C. App. 458, 297 S.E.2d 142 (1982). Although *Scott* involves a claim for alienation of affections, it neither discusses nor holds anything relevant to the issue for which it is cited by the majority. Rather, the issue in *Scott* deals with spousal privilege and sheds no light on the evidence necessary to sustain an award of punitive damages for alienation of affections.

tial holding in *Ward*, and to the extent *Ward* can be interpreted to support that proposition it is *obiter dicta. See State v. Hickey*, 317 N.C. 457, 465, 346 S.E.2d 646, 652 (1986) (holding *obiter dicta* is not binding authority).

Although *Ward* includes the statement that evidence of sexual intercourse will allow submission of the issue of punitive damages, neither the cases upon which *Ward* relies nor the facts at issue in *Ward* support the majority's conclusion. In addition to evidence of sexual intercourse, *Ward* found:

> [T]here was evidence of other aggravating circumstances. Specifically, after forming a sexual relationship with plaintiff's husband, the defendant accompanied him when he returned his children to the custody of plaintiff. On a later date, the defendant appeared unannounced at the front door of the marital home, asking plaintiff if they could be friends. Again, about a week later, defendant arrived in the driveway of the marital home while plaintiff's husband was visiting his children, blowing the car horn for plaintiff's husband. The plaintiff walked outside and recognized the defendant, who subsequently drove away without Mr. Ward. *We find this evidence of additional circumstances of aggravation sufficient to warrant submission of the punitive damages issue to the jury on plaintiff's claim for alienation of affections.*

*Ward*, 141 N.C. App. at 51, 539 S.E.2d at 35 (emphasis added).

In *Ward*, as in all of the cases to which it cites in support of its proposition that sexual intercourse will allow submission of the issue of punitive damages to a jury, there was evidence of additional aggravating factors which supported submission of the issue to a jury. Moreover, none of the cases cited by *Ward* hold, as the majority does, that sexual intercourse, in and of itself, is sufficient to allow submission of punitive damages to a jury in an alienation of affections claim.

In *Ward*, defendant repeatedly harassed plaintiff at her home and flaunted her relationship with plaintiff's husband. *Id.* In *Hutelmyer*, defendant publicly displayed her affair with plaintiff's husband and called plaintiff's home to determine his whereabouts. *Hutelmyer*, 133 N.C. App. at 371, 514 S.E.2d at 560. In *Jennings*, defendant cohabited for several weeks with plaintiff's husband and called plaintiff's home in an attempt to discover her husband's whereabouts. *Jennings*, 103

N.C. App. at 744, 407 S.E.2d at 267. In *Shaw*, defendant ignored plaintiff's request not to visit the marital home and laughed when plaintiff's wife told him that plaintiff knew of the relationship. *Shaw*, 101 N.C. App. at 517, 400 S.E.2d at 103.

Contrary to both the plaintiff's contention and the majority holding, prior case law does not validate the conclusion that evidence of sexual intercourse, standing alone, is sufficient to submit the issue of punitive damages to a jury. Although there may be a correlation between cases involving sexual intercourse and those where the issue of punitive damages is submitted to the jury, relevant case law does not support the conclusion reached by the majority. Application of the majority's interpretation of *Ward* to the instant case would lead to overreaching results and a wholesale disfigurement of the foundation upon which damage awards in claims for alienation of affections are based.

In light of the criteria requiring "willful, wanton, aggravated or malicious conduct" beyond that necessary to satisfy the elements of the tort itself, *Ward*, 141 N.C. App. at 50, 539 S.E.2d at 35, the gravamen of the standard for an award of punitive damages in an alienation of affections claim is not the mere commission or omission of certain acts, such as sexual intercourse. Rather, it is the display and manifestation of defendant's actions to the plaintiff or others, in a way that tends to exacerbate plaintiff's loss. *See Chapell*, 67 N.C. App. at 403, 313 S.E.2d at 243 (holding "there must be some evidence of circumstances of aggravation in addition to the malice implied by law from the conduct of defendant in alienating the affections between the spouses which was necessary to sustain a recovery of compensatory damages").

Additionally, plaintiff argues there was evidence of other facts, apart from the evidence of sexual intercourse, that constitute malicious, willful, or wanton conduct sufficient to submit the issue of punitive damages to the jury. In his brief and at oral argument, plaintiff argues email communications, letters, and phone calls to Debra were sufficient evidence of aggravating circumstances. Plaintiff also points to the trial court's judicial review of the punitive damages award pursuant to N.C.G.S. § 1D-50 (2001):

> (a) That the defendant knew the sexual affair between himself and Debbie Oddo Presser was wrong, and pursued said affair, and the sexual conduct involved, anyway;

(b) That the defendant intentionally pursued this sexual affair after Debbie Oddo Presser tried to terminate the relationship;

(c) That at the time of his conduct, the defendant knew that the plaintiff was married;

(d) That, at the time of the affair, the defendant pursued secret sexual meetings with Debbie Oddo Presser which he went to substantial measures to hide both from the plaintiff and from his wife;

(e) That the criminal conversations and alienation of affections committed by the defendant resulted in the absolute divorce of the plaintiff and Debbie Oddo Presser; and

(f) That at the time of his conduct, the defendant himself was married and he separated from his wife soon after his sexual affair with Debbie Oddo Presser began.

The trial court's review shows that defendant did not display or manifest to plaintiff or others his communication with Debra. Defendant's actions are merely dimensions of the malice ascribed to the underlying tort of alienation of affections and would be inherent in most claims of alienation of affections. Thus, defendant's actions are insufficient evidence of aggravating factors to allow the issue of punitive damages to be submitted to a jury.[3] To hold otherwise renders meaningless the long held standard allowing punitive damages only where defendant's actions evince circumstances of aggravation in addition to the malice implied by law from the tort itself. *See Chapell,* 67 N.C. App. at 403, 313 S.E.2d at 243.

In the case *sub judice,* unlike previous cases allowing punitive damages, there is no evidence of malicious, willful, or wanton conduct beyond that inherent in the underlying tort. Defendant did not flaunt or make known his contact with Debra. There is no record evidence that prior to separation defendant manifested his relationship

---

3. Although N.C.G.S. § 1D-35 (2001) sets forth the factors a jury may consider in determining *the amount* of punitive damages to be awarded, the first inquiry under G.S. § 1D-15 is whether, due to defendant's fraudulent, malicious, willful, or wanton conduct, sufficient evidence of aggravation exists to *entitle* plaintiff to punitive damages. Therefore, although G.S. § 1D-35 includes concealment as a factor in determining the amount of punitive damages, its inclusion is not determinative of whether there is aggravation pursuant to G.S. § 1D-15 (standards for recovery of punitive damages). Furthermore, I note that in many garden variety civil tort actions, the evidence may suggest feature(s) described in G.S. § 1D-35. This does not mean, of course, that every one of these tortfeasors is necessarily subject to punitive damages.

with Debra or made known his feelings to anyone other than Debra. In essence, plaintiff's claim rests on the evidence of sexual intercourse occurring on one or two occasions, approximately two weeks before the parties separated.[4]

I would hold the evidence of sexual intercourse, in and of itself, was insufficient to allow the submission of punitive damages to the jury in the claim for alienation of affections. Because the verdict sheet combined the issues of punitive damages for alienation of affections and criminal conversation, I would reverse and remand for a new trial on the issue of punitive damages for criminal conversation.

———

4. There is some evidence that defendant and Debra engaged in sexual intercourse once after plaintiff and Debra separated, but before they divorced. However, plaintiff may not recover damages for post-separation conduct. *Pharr v. Beck*, 147 N.C. App. 268, 273, 554 S.E.2d 851, 855 (2001) (in an action for alienation of affections, spouse may not recover damages for post-separation conduct).